FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 FEB 22  PM 4: 14

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LUCINDA BEADLE, Personal                )
Representative of the Estate of Daniel A.  )
Elrod, Deceased,                        )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )
                                        )
THE CITY OF OMAHA, a political          )
subdivision of the State of Nebraska;   )
TODD SCHMADERER, in his                 )
official capacity as Chief of Police for the )
City of Omaha Police Department;        )
ALVIN LUGOD, individually and in his    )
official capacity as an officer of the City of  )
Omaha Police Department; and DOES       )
1-25, inclusive,                        )
                Defendants.             )

CASE NO: 8:18CV 81

**NOTICE OF REMOVAL
AND
DEMAND FOR JURY TRIAL**

COMES NOW the City of Omaha, Todd Schmaderer in his official capacity as Chief of

Police for the City of Omaha Police Department, and Alvin Lugod, individually and in his

official capacity, the Defendants in the above-entitled action, and remove this action to this

United States District Court for the District of Nebraska upon the following showing:

        1.      On February 19, 2018, the Plaintiff filed a Third Amended Complaint in an action

entitled Lucinda Beadle, Personal Representative of the Estate of Daniel A. Elrod, Deceased vs.

The City of Omaha, a political subdivision, Todd Schmaderer, in his capacity as Chief of Police

for the City of Omaha, Former Officer Alvin Lugod, individually and in his official position as a

Omaha Police officer and Agent of the City of Omaha, And Does 1-25, inclusive in the District

Court of Douglas County, Nebraska, and identified as Case No. CI 16-8620 where it is presently

pending.  A true and accurate copy of the Third Amended Complaint is attached hereto as

1

Exhibit 1. That Third Amended Complaint asserts that the Defendants' conduct deprived the Plaintiff, in her capacity as personal representative of the Estate of Daniel A. Elrod, of the federal constitutional rights of Daniel A. Elrod and seeks recovery pursuant to 42 U.S.C. §1983, whereas the prior complaints filed in District Court of Douglas County, Nebraska only sought relief under state law claims.

2.      The Third Amended Complaint filed on February 19, 2018 is the first pleading which the District Court granted permission to file from which it can be ascertained that the case is removable. In the District Court's Order granting the Plaintiff leave to file a Third Amended Complaint the District Court ordered the Defendants to file a responsive pleading to the Third Amended Complaint no later than March 2, 2018.

3.      The Third Amended Complaint in the pending action presents a claim arising under the United States Constitution, treaties, or laws of the United States and is removable from the State court in accordance with 28 U.S.C. § 1441(a).

4.      All Defendants named in the Complaint join in this Removal.

5.      Service of process was made and/or the Third Amended Complaint was received by these named Defendants on or about February 19, 2018. This Notice of Removal is filed within 30 days after any named Defendant first received or was served with the Third Amended Complaint and within the 11 days granted by the State court to Answer the Complaint.

6.      Pursuant to 28 U.S.C. § 1331 this Court has original jurisdiction of the claim filed by Lucinda Beadle in the District Court of Douglas County, Nebraska, and the action may, therefore, be removed to this Court pursuant to 28 U.S.C. § 1441.

WHEREFORE, the named Defendants pray that the above entitled action be removed from the District Court of Douglas County, Nebraska to this Court.

2

## DEMAND FOR JURY TRIAL

Defendants request a jury trial in Omaha, Nebraska.

THE CITY OF OMAHA, TODD SCHMADERER, in his official capacity, and ALVIN LUGOD, in his individual and official capacities, Defendants.

By: s/ Ryan J. Wiesen
    MICHELLE PETERS, No. 20021
    Deputy City Attorney
    RYAN J. WIESEN, No. 24810
    Assistant City Attorney
    Omaha/Douglas Civic Center
    1819 Farnam Street, Suite 804
    Omaha, Nebraska 68183
    Telephone: (402) 444-5115
    Fax: (402) 444-5125
    Ryan.Wiesen@cityofomaha.org
    Attorneys for the listed Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on 22nd day of February, 2018, I filed the foregoing **NOTICE TO REMOVE** with the Clerk of the Court and sent notification of such filing by first class mail, postage prepaid, addressed to:

Brian E. Jorde
Domina Law Group, P.C. L.L.O.
2425 South 144th Street
Omaha, NE 68144-3267

s/ Ryan J. Wiesen

3

Filed in Douglas District Court
\*\*\* EFILED \*\*\*
Case Number: D01CI160008620
Transaction ID: 0006455052
Filing Date: 02/19/2018 04:46:31 PM CST

**District Court, Douglas County, Nebraska**

| | |
|---|---|
| Lucinda Beadle, Personal Representative of the Estate of Daniel A. Elrod, Deceased, | Case No. CI 16-8620 |
| **Plaintiff,** | |
| v. | |
| The City of Omaha, a political subdivision, Todd Schmaderer, in his capacity as Chief of Police for the City of Omaha, Former Officer Alvin Lugod, individually and in his official position as a Omaha Police officer and Agent of the City of Omaha, And Does 1-25, inclusive, | **Third Amended Complaint & Jury Demand** |
| **Defendants.** | |

Plaintiff alleges:

## Case Overview

1.     Daniel "Danny" A. Elrod ("Mr. Elrod" and "Decedent") died on February 23, 2015 ("the incident"). At the time of the incident, Mr. Elrod had clearly established constitutional and civil rights. Three bullets discharged from Alvin Lugod's ("Lugod") service revolver striking Mr. Elrod in his back, while Lugod was acting within the scope and course of his employment as a police officer for the Omaha Police Department ("OPD"). No other officer on scene discharged their service weapon or firearm of any kind. Mr. Elrod did not have a weapon nor did he use force or deadly force.

2.     Mr. Elrod did not pose an imminent threat of death or serious bodily injury to any person at any relevant time during his interaction with the officers.

3.     Mr. Elrod was visibly intoxicated such that an objective and reasonable officer would have appreciated such condition and acted appropriately.

4.     Mr. Elrod's death is the proximate result of the negligent acts or failures to act of the OPD and/or negligent and intentional acts or failures to act of Mr. Lugod.



EXHIBIT

1

5.     Two separate and distinct theories of recovery, not dependent upon each other, are brought here, one for each of Mr. Elrod's next of kin for his wrongful death, and one for Mr. Elrod's conscious pain and suffering, brought for the benefit of his estate.

6.     There are multiple independent conscious pain and suffering claims each having distinct time periods. The first is solely based upon events from the moment immediately after the first bullet struck Mr. Elrod and before the second bullet struck Mr. Elrod. The second is based upon after the second bullet struck Mr. Elrod and before the third bullet struck Mr. Elrod. The third is after the third and final bullet struck Mr. Elrod up to and until his death, approximately three hours later.

### Jurisdiction, Venue, Parties

7.     The District Court has subject matter jurisdiction of this action for wrongful death pursuant to the *Wrongful Death Act*[1] and its general subject matter jurisdiction[2]. Venue is proper in Douglas County, Nebraska, where the City of Omaha is located and where the claims arose.[3]

8.     A Tort Claim was filed in accord with *Neb Rev Stat §§ 13-901 et seq.*, the *Political Subdivision Tort Claims Act,* on February 23, 2016. This claim was acknowledged in writing by the City of Omaha. The Claim was timely withdrawn on or about October 11, 2016, more than six (6) months after it was filed. The Tort Claim was not acted upon by the City. All procedural prerequisites to this lawsuit have been satisfied.

9.     The Plaintiff is Lucinda Beadle, the Personal Representative ("PR") of the estate of the Decedent. She is the mother-in-law of decedent and grandmother of Jacob D, decedent's son. She is providing for Jacob's care at the present time. The appointment of Ms. Beadle as PR was accomplished in County Court, Douglas County, Nebraska on February 29, 2016 in case No. PR 16-305.   The names and birth years of Decedent's next of kin are:

| | | |
|---|---|---|
| Amanda Elrod | age over 30 years | Spouse |
| J.   D | minor | Son |
| Daniel McFerrin | DOB :_ . . . | Son |
| Chandler Riley | DOB | Daughter |

---

[1]   *Neb Rev Stat §§ 30-801 et seq.*
[2]   *Neb Rev Stat § 24-302*
[3]   *Neb Rev Stat § 25-403.01*

2

CV5042.08

| Taylor Myers | DOB ˄ | Daughter |
| David Dewitt | DOB | Son |
| C        D | minor | Son |

10.     The City of Omaha ("City") is a both a direct defendant for its negligent acts and failures to act and an indirect defendant with vicarious liability due to the doctrine of *respondeat superior*. City is a Nebraska political subdivision. At the time of this filing, Omaha's Mayor is Jean Stothert and its City Clerk is Buster Brown. They may be served with process at 1819 Farnam Street, Suite LC1, Omaha, NE 68183.

11.     The OPD is an agency of the City operated by the City. Its Police Officers Officer Doe #1, Officer Doe #2, Officer Doe #3 and Lugod, were at all relevant times employees and agents of the City while acting within the scope of their employment. Elrod was shot by Lugod three times while the involved members of the OPD were acting within the scope of their employment with the City. Negligent and intentional acts and omissions of the OPD and its Officers are imputed to the City.

12.     Defendant Todd Schmaderer ("Schmaderer") was at all times mentioned herein the police chief of the City of Omaha. He is being sued in his official capacity as Chief of Police.

13.     Defendant Alvin Lugod is a resident of Sarpy County, Nebraska. He is being sued in his individual and official capacity.

14.     Plaintiff is unaware of the true names and capacities of Defendants Does #1-25 inclusive, and therefore sues these defendants by such fictitious names. Plaintiff believes Does #1-25, inclusive, so named is responsible in some manner for the injuries and damages sustained by Decedent and his Estate and his next-of-kin as set forth herein. Plaintiff shall state the names and capacities of Does #1-25, inclusive, when they have been ascertained.

15.     In engaging in the conduct described herein, Defendants acted under the color of law and in the course and scope of their employment with the City of Omaha. In engaging in the conduct described herein, Defendant Lugod exceeded the authority vested in him as a police officer under the United States and Nebraska Constitutions and as a police officer employed by Defendant City of Omaha.

3

CV5042.08

## The Facts, the Shooting and Mr. Elrod's Death

16.     All allegations above are incorporated here.

17.     This is a lawsuit for the Decedent's wrongful death as well as for his conscious pain and suffering.

18.     Decedent was killed by former Omaha Police Officer Alvin Lugod, on the premises of the Sports Car Garage at 1461 S 13th Street Omaha, Douglas County Nebraska, while Lugod was acting in the performance of his professional duties.

19.     Four Omaha police officers were dispatched or responded to an area near the location where Decedent was killed, including Officer Doe #1, Officer Doe #2, Officer Doe #3 and Lugod.

20.     Upon each officer encountering Mr. Elrod, he was unarmed and walking calmly and slowly not engaged in any aggressive or violent or dangers acts of any kind.

21.     Mr. Elrod was visibly intoxicated and otherwise mentally impaired.

22.     Mr. Elrod's intoxication was presumed or obvious or should have been reasonably presumed or obvious by Defendant Lugod.

23.     Mr. Elrod did not possess any weapon or dangerous instrumentality of any kind.

24.     At no time did Mr. Elrod make any threat with a weapon to any Officer, including Lugod.

25.     There was no rationale or good faith based reason or probably cause for Defendant Lugod to believe Mr. Elrod was actually armed with a gun.

26.     There was no rationale or good faith based reason or probable cause for a reasonably trained Omaha Police officer to believe Mr. Elrod was actually armed with a gun.

27.     There was no rationale or good faith based reason or probably cause for Defendant Lugod to believe Mr. Elrod was actually armed with any dangerous instrumentality.

28.     There was no rationale or good faith based reason or probable cause for a reasonably trained Omaha Police officer to believe Mr. Elrod was actually armed with any dangerous instrumentality.

4

CV5042.08

29.   Even if, Mr. Elrod stated he had a gun, there was no rationale or good faith based reason for Defendant Lugod to believe Mr. Elrod was actually armed with a gun.

30.   Even if, Mr. Elrod stated he had a weapon, there was no rationale or good faith based reason for Defendant Lugod to believe Mr. Elrod was actually armed with any dangerous instrumentality.

31.   Even if, Mr. Elrod stated he had a gun, at no time did Mr. Elrod ever display a firearm of any kind.

32.   There was no objective evidence equating to probable cause which would have allowed a reasonable presumption by a training Omaha Police officer that Mr. Elrod was armed.

33.   No report was made to the OPD or its 911 or dispatch that Mr. Elrod had a gun or dangerous instrumentality.

34.   No police dispatch regarding Mr. Elrod ever stated that Mr. Elrod had a gun or dangerous instrumentality.

35.   Mr. Elrod never threatened the use of deadly force at any time while at the Family Dollar store.

36.   Mr. Elrod never threatened the use of deadly force at any time while on the Sports Car Garage premises.

37.   Upon initially encountering Mr. Elrod, Defendant Lugod, rather than trying to calmly deal with the situation at hand exited his police cruiser with his service weapon drawn and pointed at Mr. Elrod shouting to Mr. Elrod "your're gonna get shot!" This was unreasonable and needlessly escalated the situation and combined to create the environment leading to Mr. Elrod's death.

38.   Defendant Lugod seconds later and without justification first infers that he is going to shoot Mr. Elrod by stating "don't make me do this" and then again statesd "your're gonna get shot!" This was unreasonable and needlessly escalated the situation and combined to create the environment leading to Mr. Elrod's death.

39.   Defendant Lugod's words and actions towards Mr. Elrod are inconsistent with best-practices and the applicable standard of care governing police officers similarly situated

CV5042.08

as Defendant Lugod as it is an officers duty to de-escalated and not escalate the situation by their own conduct.

40.   Defendant Lugod provoked and caused the shooting, not Mr. Elrod.

41.   To this end, Defendant Lugod's conduct exhibited fundamental unconstitutional training by Defendant City and Schmaderer in the use of deadly force in general and specifically in the use of deadly force upon an intoxicated and mentally impaired subject as Mr. Elrod.

42.   During these moments when Officer Lugod is threating to shot Mr. Elrod, Mr. Elrod posed no risk of imminent harm, was not attempting to evade arrest, and was not an imminent risk to the public at large.

43.   No reasonable Omaha Police officer would have believed Mr. Elrod was armed based on his actions and inactions.

44.   There was no objective evidence which would have allowed a reasonable presumption by Defendant Lugod or any reasonably trained Omaha Police officer that Mr. Elrod was armed at the time he was shot with the first bullet.

45.   There was no objective evidence which would have allowed a reasonable presumption by Defendant Lugod or any reasonably trained Omaha Police officer that Mr. Elrod was armed at the time he was shot with the second bullet.

46.   There was no objective evidence which would have allowed a reasonable presumption by Defendant Lugod or any reasonably trained Omaha Police officer that Mr. Elrod was armed at the time he was shot with the third bullet.

47.   Even after Mr. Elrod was hit with a Taser, he did not retrieve any gun of his own or attempt to retaliate in anyway at all.

48.   Even after Mr. Elrod was hit with a Taser, he did not retrieve any dangerous instrumentality of his own or attempt to retaliate in anyway at all.

49.   After being hit with a Taser, Mr. Elrod turned his back to Defendant Lugod and attempted to climb into a barbed-wire fenced in area on the Sports Car Garage premises.

50.   Prior to discharging his service weapon Defendant Lugod failed to appreciate the risks of firing his weapon and missing his target.

6

51.    At the moment it was clear to all Officers, including Lugod, that Mr. Elrod's back was turned, both hands were up on the barbed-wire fence, and he had lifted his right leg up the air and was engaged in his attempt to leap further away from the direction of all officers over the fence and into the fenced off area, Defendant Lugod shot Mr. Elrod in the back.[4] This was an unreasonable unjustifiable use of deadly force that constitutes excessive force for the actually situation and facts then existing and was a violation of well-established constitutional and civil rights of Mr. Elrod.

52.    At the time Defendant Lugod's weapon discharged, Lugod knew Mr. Elrod's hands were visible and in the air and he was turned with his back facing Defendant Lugod.

53.    At the time Defendant Lugod's weapon discharged, a reasonable officer in the same or similar situation as Lugod would have known and appreciated that Mr. Elrod's hands were visible and in the air.

54.    At the time Defendant Lugod's weapon discharged, a reasonable officer in the same or similar situation as Lugod would have known and appreciated that Mr. Elrod's hands were visible and in the air, his right leg was visible and in the air, he was standing on the hood of a motor vehicle, that he was about 20 feet or more away from Defendant Lugod, illuminated and in plain sight based upon the position of the headlights and other lighting from the police cruisers on scene, as well as lighting at the premises, and that Mr. Elrod was not behaving any threatening manner and was without means of inflicting any imminent death or injury upon any person on scene. Defendant Lugod's actions were unreasonable and no probable cause existed to justify such actions.

55.    None of the other Officers on scene fired their service revolvers at or prior to or after the times Lugod's weapon discharged.

56.    None of the other Officers on scene fired their service revolvers at or prior to or after the time Lugod's weapon discharged because none of those Officers feared that their lives were in imminent danger.

57.    None of the other Officers fired their service revolvers at or prior to the time Lugod's weapon discharged because none of those Officers feared that the life of any other Officers on scene was in imminent danger.

---

[4] See Police Dash Cam Video

7

58.     Officer Doe #1 did not believe Mr. Elrod was armed.

59.     Officer Doe #2 did not believe Mr. Elrod was armed.

60.     Officer Doe #3 did not believe Mr. Elrod was armed.

61.     Officer Lugod did not believe Mr. Elrod was armed.

62.     Even if any officer later claims that at the time they believed Mr. Elrod was in fact armed with a gun, any such belief was not reasonable given the totality of all circumstances existing at the time of the incident.

63.     Mr. Elrod was not an imminent threat of death to Alvin Lugod at any times during the incident.

64.     Mr. Elrod was not an imminent threat of death to any officer on the scene at any times during the incident.

65.     Mr. Elrod was not an imminent threat of death to any member of the public at any times during the incident.

66.     Mr. Elrod was not an imminent threat of serious bodily injury to Alvin Lugod at any times during the incident.

67.     Mr. Elrod was not an imminent threat of serious bodily injury to any officer on the scene at any times during the incident.

68.     Mr. Elrod was not an imminent threat of serious bodily injury to any member of the public at any times during the incident.

69.     There was no emergency at the time of the first bullet was fired from Lugod's service revolver.

70.     There was no emergency at the time of the second bullet was fired from Lugod's service revolver.

71.     There was no emergency at the time of the third bullet was fired from Lugod's service revolver.

72.     Mr. Elrod was not an imminent threat of death at the moment of the first gun shot being fired by Defendant Lugod.

73.     Mr. Elrod was not an imminent threat of death at the moment of the second gun shot being fired by Defendant Lugod.

8

74. Mr. Elrod was not an imminent threat of death at the moment of the third gun shoot being fired by Defendant Lugod.

75. Mr. Elrod was not an imminent threat of death at any time during the incident.

76. Mr. Elrod was not an imminent threat of serious bodily injury at the moment of the first gun shot being fired by Defendant Lugod.

77. Mr. Elrod was not an imminent threat of serious bodily injury at the moment of the second gun shot being fired by Defendant Lugod.

78. Mr. Elrod was not an imminent threat of serious bodily injury at the moment of the third gun shoot being fired by Defendant Lugod.

79. Mr. Elrod was not an imminent threat of serious bodily injury at any time during the incident.

80. Mr. Elrod was not a significant threat of death at the moment of the first gun shot being fired by Defendant Lugod.

81. Mr. Elrod was not a significant threat of death at the moment of the second gun shot being fired by Defendant Lugod.

82. Mr. Elrod was not a significant threat of death at the moment of the third gun shoot being fired by Defendant Lugod.

83. Mr. Elrod was not a significant threat of death at any time during the incident.

84. Mr. Elrod never used deadly force during the incident or at any time while at the Family Dollar store.

85. There was no substantial risk that Mr. Elrod would have caused death or serious bodily harm to Defendant Lugod if his apprehension was delayed.

86. There was no substantial risk that Mr. Elrod would have caused death or serious bodily harm to Officer Doe #1, #2, or #3 or any other officer on scene if his apprehension was delayed.

87. There was no substantial risk that Mr. Elrod would have caused death or serious bodily harm to any member of the public if his apprehension was delayed.

88. At many times prior to Defendant Lugod shooting Mr. Elrod, Mr. Elrod made the same or similar motion or motions, as he did at the moment Lugod shot him, turning towards the other two officers opposite the location where Defendant Lugod and a female

9

officer were located, and at no time during this similar behavior did any officer fire their service weapon.

89.   Any defense that Defendant Lugod believed Mr. Elrod was an imminent threat death or serious bodily harm to the male officer standing at a about a 45 degree angle to where Lugod was located is unreasonable and unfounded based on the facts and the totality of the circumstances and how prior events occurred.[5]

90.   No members of the public were on scene during the incident in which Defendant Lugod shot and killed Mr. Elrod.

91.   None of the acts of the three bullets being discharged from Lugod's service revolver were justifiable.

92.   At the moment Defendant Lugod fired his first bullet into Mr. Elrod's back, Mr. Elrod was not with reasonable means to escape the Omaha Police Officers on scene.

93.   At the moment Defendant Lugod fired his second bullet into Mr. Elrod's back, Mr. Elrod was not with reasonable means to escape the Omaha Police Officers on scene.

94.   At the moment Defendant Lugod fired his third bullet into Mr. Elrod's back, Mr. Elrod was not with reasonable means to escape the Omaha Police Officers on scene.

95.   Defendant Lugod's act of firing each of the three bullets did not stem from any attempt at self-defense.

96.   Defendant Lugod intended to cause a harmful or offensive contact to Mr. Elrod.

97.   Defendant Lugod intended to cause an imminent apprehension of a harmful or offensive contact to Mr. Elrod.

98.   From the moment Defendant Lugod initially confronted Mr. Elrod to the moment he shot Mr. Elrod, Mr. Elrod committed no unlawful act.

99.   Defendant Lugod was attempting to detain and not arrest Mr. Elrod at all relevant times.

100.   At one or more times during the incident Defendant Lugod acted with deliberate indifference towards Mr. Elrod's constitutional and civil rights.

---

[5] See Police Dash Cam Video

10

CV5042.08

101.   A reasonably well-trained police officer would have known that shooting an individual in the back under the circumstances of the incident here is unlawful conduct which violated the constitutional and civil rights of Mr. Elrod.

102.   Mr. Elrod died at the University of Nebraska Medical Center approximately three hours after Defendant Lugod shot him.

103.   Mr. Elrod's death was the proximate cause of conduct by Defendant Lugod in violation of Mr. Elrod's constitutional rights.

104.   Defendant Lugod's conduct was outside the scope of his duties.

105.   Defendant Lugod's shooting of Mr. Elrod was malicious, wanton, and oppressive.

106.   Clearly established law provided notice to Defendant Lugod that his actions as discussed herein would violate the Fourth Amendment.

107.   Given all the circumstances, no reasonable officer would have assessed Mr. Elrod as such an imminent injury risk or flight risk as to justify shooting Mr. Elrod.

108.   Governmental interests of protecting officers and the public from an imminent risk of death or serious physical injury were simply not implicated at the moment Defendant Lugod decided to shoot Mr. Elrod in the back.

109.   Officer Lugod was previously involved in a shooting while on duty with the OPD that caused the death of a resident of Omaha. OPD was aware of this killing yet Defendant Lugod remained on the streets as an Omaha Police Officer.

110.   Other allegations of misconduct and of inappropriate use of force by Defendant Lugod were reported to the OPD yet Defendant Lugod remained on the streets as an Omaha Police Officer.

111.   It was foreseeable by OPD that the risk of allowing Officer Lugod to be placed in a similar set of circumstances as his prior fatal shooting could lead to similar fatal results.

112.   It was foreseeable by OPD that Officer Lugod would make unreasonable decisions and act unreasonably when given the opportunity to use his service revolver.

113.   OPD has in place and taught to Defendant Lugod policies and procedures that are unconstitutional and/or misstate applicable law outlining situations where a Police Officer can use deadly force.

CV5042.08

114.   Decedent's wrongful death and his conscious pain and suffering and were proximately caused by acts and failures to act as committed by Defendant Lugod and the OPD.

115.   Following Defendant Lugod's killing of Mr. Elrod, the OPD was going to fire Lugod for his actions and breaches of OPD policy and procedure but Defendant Lugod instead resigned in a negotiated settlement with OPD.

116.   None of Mr. Elrod's actions constituted a superseding cause of his own injury.

### Negligent Acts – Omaha Police Department

117.   All allegations above are incorporated here.

118.   The City of Omaha is vicariously liable through its Police Department and Police Department personnel and one or more of their independent negligent breaches of their duties to Decedent.

119.   The Omaha Police Department ("OPD") was negligent in one or more of the following ways:

119.1. By negligently retaining employment of and failing to properly discipline Defendant Lugod following a prior incident where Defendant Lugod's weapon discharged and killed a resident of Omaha;

119.2. By negligently retaining employment of and failing to properly discipline Defendant Lugod following prior bad acts and allowing him to remain in active duty following a prior incident where Defendant Lugod's weapon discharged and killed a citizen of Omaha;

119.3. By negligently allowing Defendant Lugod to have use of a service revolver;

119.4. By negligently supplying Defendant Lugod with the bullets that were used to kill Daniel Elrod;

119.5. By negligently failing to foresee the foreseeable events in question in this lawsuit based upon all of Lugod's prior acts and failures to act while employed by OPD that were all known to OPD;

119.6. By negligently educating, training, and supervising Defendant Lugod;

12

119.7. By negligently failing to properly educate, train, and supervise Defendant Lugod;

119.8. By negligently failing to adopt and require its personnel, including, Defendant Lugod, follow reasonable and prudent Departmental policies, procedures, and regulations to assure the safety of persons, including Decedent;

119.9. By negligently failing to establish and train personnel in a protocol for dealing with circumstances like those in which the Decedent was killed;

119.10.    By negligently failing to comply with Omaha Police Department policy, protocol, procedure and/or regulation;

119.11.    By having enforce policies and procedures that are unconstitutional or unlawful and teaching such unconstitutional or unlawful polices to its Officers, including Defendant Lugod;

119.12.    By enforcing its policy's or practices which constitute violations of state constitutional rights;

119.13.    By enforcing its policy's or practices which constitute violations of federal constitutional rights; and/or

119.14.    By other negligent acts of omission or commission not yet known which require discovery to be determined.

### Negligent Acts – Defendant Alvin Lugod

120.   All allegations above are incorporated here.

121.   Defendant Lugod was negligent or reckless in one or more of the following ways:

121.1. By negligently failing to appreciate Mr. Elrod was without all of his mental or cognitive faculties at the time of the incident;

121.2. By negligently failing to appreciate Mr. Elrod posed no risk of harm;

121.3. By negligently failing to appreciate Mr. Elrod posed no substantial risk of harm of causing serious bodily injury of another person;

13

121.4. By negligently failing to appreciate Mr. Elrod posed no substantial risk of harm of causing the death of another person;

121.5. By negligently and prematurely brandishing his service revolver given the totality of the circumstances known and reasonably ascertainable by a reasonably prudent police officer;

121.6. By negligently and prematurely instantly threating to shot Mr. Elrod given the totality of the circumstances known and reasonably ascertainable by a reasonably prudent police officer;

121.7. By negligently creating an environment where his use of his service revolver led to an unjustifiable creation of an excessive, unreasonable, and/or unjustified use of force against Mr. Elrod;

121.8. By negligently creating an environment where his negligent decision to use his service revolver lead to an unjustifiable use of deadly force against Mr. Elrod;

121.9. By failing to de-escalate the situation;

121.10.   By negligently using unreasonable tactics relative to Mr. Elrod based on the totality of the circumstances;

121.11.   By negligently believing he was justified to utilize deadly force against Mr. Elrod;

121.12.   By negligently acting in a manner inconsistent with the law governing his conduct;

121.13.   By negligently acting inconsistent with Officers Doe #1, #2, and #3, who understood the law governing their conduct and whose service revolvers did not discharge;

121.14.   By negligently failing to comprehend that Mr. Elrod was attempting to climb the barbed wire fence encompassing the property of the Sports Car Garage whereby, once over the fence Mr. Elrod would have been fully contained within the protected fenced area, without immediate means to get out of the fenced-in area, and where Mr. Elrod would have voluntarily put himself in the control of the

14

CV5042.08

Officers on the scene who had established a perimeter around the property;

121.15.   By negligently believing there was justification to shoot Daniel Elrod at each precise moment of each of Lugod's three shots;

121.16.   By negligently failing to conclude, given the totality of all the circumstances leading up to the shooting, that the use of deadly force was not justified;

121.17.   By negligently failing to act in conformity of Officer Doe #1 Officer Doe #2 and Officer Doe #3 whom did not create an environment where bullets were discharged from their service revolvers; and/or

121.18.   By other negligent acts of omission or commission not yet known which require discovery to be determined.

### Intentional Acts – Defendant Alvin Lugod

122.   All allegations above are incorporated here.

123.   Many of Defendant Lugod's negligent and/or reckless acts and inactions proximately lead to unfounded and unjustified intentional acts.

124.   Defendant Lugod intentionally aimed his service revolver at Daniel Elrod's back.

125.   Defendant Lugod intentionally fired bullets from his service revolver three times at Daniel Elrod's back.

126.   Defendant Lugod intentionally struck Daniel Elrod in the back with three bullets fired from Lugod's service revolver.

127.   Defendant Lugod intentionally killed Daniel Elrod.

128.   Defendant Lugod engaged in conduct that violated clearly established statutory or constitutional or civil rights of Mr. Elrod which a reasonable Officer would have appreciated and not similarly violated.

129.   Defendant Lugod knowingly violated the law when taken these actions.

130.   Officers Doe #1, #2, and #3 knew and appreciated Mr. Elrod's well-established constitutional rights and refrained from violating them when each decided to not

15

CV5042.08

discharge their service weapons and not shoot Mr. Elrod at the moments Defendant Lugod did.

131.    It was an unconstitutional act when Defendant Lugod seized unarmed not dangerous Mr. Elrod by shooting him dead.

132.    All such acts by Defendant Lugod constitute excessive force and excessive and unjustified use of deadly force.

133.    One or more of the foregoing acts or failures to act of the OPD and/or Defendant Lugod, set forth in the paragraphs above and their subparts, constitute the proximate cause of Decedent's wrongful death and conscious pain and suffering.

Constitutional Issues – Trial by Jury

134.    Plaintiff contends that *Neb Rev Stat* § 13-907, requiring trial to the court without a jury is unconstitutional. The provision of the Political Subdivisions Tort Claims Act found at §13–907 contains an unconstitutional requirement of trial to "the appropriate court without a jury". This statutory provision violates *Neb Const* Art I, §§ 3 & 6. These guarantees of the Nebraska Bill of Rights provide:

135.    **Art I, Sec 3:** No person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws.

136.    **Art I, Sec 6:** The right of trial by jury shall remain inviolate, but the Legislature may authorize trial by a jury of a less number than twelve in courts inferior to the District Court, and may by general law authorize a verdict in civil cases in any court by not less than five-sixths of the jury.

137.    The right to trial by jury existed against the sovereign at common law when sovereign immunity was waived. Wm. A. Forsyth, *History of Trial by Jury* (2d Ed prepared by James Appleton Morgan, Esq. (Frederick D Lynn & Co. 1875)). (Forsyth was the Late Fellow of Trinity College, Cambridge, and Author of "*Hortensiu or History of Lawyers*"). The right to trial by jury against the government existed under British law against the Monarch at the time of the Declaration of Independence by the United States from the King of England, and at the time of adoption of the U.S. Constitution, as well as at the time of Nebraska's statehood and adoption of its Constitution. Art I, Sec 6 of the Nebraska Constitution guarantees that this right shall remain inviolate. Denial of this right deprives

16

Plaintiff of the right to trial by jury and deprives him of both due process and equal protection of the laws.

138.    Plaintiff also respectfully asserts that Neb Rev Stat § 13-926, limiting the amount of permissible recovery for a tort claim is unconstitutional and void.    Plaintiff contends the limit or cap on damages forth at *Neb Rev Stat* § 13-926 is unconstitutional for one or more of these reasons:

138.1. It violates *Neb Const Art* I, §§ 3 & 6, set forth above.    It is the duty of the judiciary, and the jury, to determine torts and damages.    Limitation on the amount of damages violates the right to trial by jury by limiting it.    This limitation further denies both due process of law and equal protection of depriving Plaintiff of a judicially determined amount of damages.

138.2. It violates *Neb Const* Art 1 § 21, because it partially closes the courts.

138.3. It violates *Neb Const* Art II, § 1(1), which divides the powers of the government of Nebraska, into 3 distinct departments, the legislative, executive, and judicial, and prohibits the exercise of powers of one department by persons in another department.    It does so by legislatively limiting the amount of damages recoverable and thereby infringing on the judicial powers, duties and responsibilities of the judicial branch of government to adjudicate private controversies or disputes and to determine the amount of damages to be awarded.

138.4. It violates *US Const* Art I § 8 cl 3, which provides "Congress shall have Power to...regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." This express grant of power to Congress contains "a further, negative command, known as the dormant Commerce Clause," *Okla Tax Comm'n v Jefferson Lines, Inc.*, 514 US 175, 179 (1995), which limits the power of local governments to enact laws affecting interstate commerce. Hughes v Oklahoma, 441 US 322, 326 (1979).  *Neb Rev Stat* § 13-926 discriminates against interstate commerce in favor of intrastate commerce, and does so unconstitutionally. In this context, discrimination "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys, Inc v Dep't of Envt'l Quality*, 511 US 93, 99 (1994).  The statutory cap is not

17

demonstrably justified by a valid factor unrelated to economic protectionism. *Wyoming v Oklahoma*, 502 US 437, 454 (1992).

## First Claim:
## Wrongful Death

139.    All allegations above are incorporated here.

140.    Decedent's wrongful death deprived his next of kin of his care, comfort, companionship, society, support, services, advice, counsel, love, and affection. He was married and had six (6) children. He is survived by his next of kin identified above. The claimant presents this claim for wrongful death on behalf of the next of kin pursuant to *Neb Rev Stat* §§ 30–809 et seq.

141.    General damages are sought independently and individually for each of the Decedent's next of kin for his wrongful death.

## Second Claim:
## Conscious Pain & Suffering

142.    All allegations above are renewed here.

143.    There are three independent conscious pain and suffering claims each have distinct time periods.

144.    There are multiple independent conscious pain and suffering claims each having distinct time periods.

145.    The first period of Mr. Elrod's conscious pain and suffering is solely based upon events from the moment immediately after the first bullet struck Mr. Elrod and before the second bullet struck Mr. Elrod.

146.    The second period of Mr. Elrod's conscious pain and suffering is solely based upon events from the moment immediately after the second bullet struck Mr. Elrod and before the third bullet struck Mr. Elrod.

147.    The third period of Mr. Elrod's conscious pain and suffering is solely based upon events from the moment immediately after the third and final bullet struck Mr. Elrod up to and until his death, approximately three hours later.

148.    Decent lived and consciously suffered for approximately three hours before his death.

18

CV5042.08

149.   General damages are sought for the Decedent's conscious pain and suffering.

## Third Claim:
## Funeral & Burial

150.   All allegations above are renewed here.

151.   Special damages are sought for payment for all expenses incurred for the medical care, transportation, care for, and disposal of Daniel's body, and for his funeral expenses. These special damages are estimated in the total sum of $5,000.

## Fourth Claim:
## Constitutional and Civil Rights Violations - 42 U.S.C. § 1983

152.   All allegations above are renewed here.

153.   Defendant Lugod and Does #1-10, inclusive, actions and inactions described above and incorporated here, proximately caused the violation and depravation or rights guaranteed to Mr. Elrod by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, including but not limited to, the rights to be free from an unreasonable seizure of his person and the rights to be free from the use of excessive, unreasonable, and unjustified force, and otherwise be able to enjoy the rights and privileges secured by the United States Constitution

154.   Mr. Elrod had a right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment of the United States Constitution.

155.   The acts described above were taken while Defendant Lugod and the OPD were acting under the color of state law in direct violation of Decedent's constitutional rights and privileges, and are therefore actionable under 42 U.S.C. § 1983.

156.   As a direct result of Defendants' actions, Decedent suffered a direct and immediate violation of his fundamental rights guaranteed by the United States Constitution and is therefore entitled to attorney fees, pursuant to 42 U.S.C. § 1988.

157.   Qualified Immunity does not apply because Defendant Lugod violated Mr. Elrod's constitutional rights that were clearly established at the moments Defendant Lugod fired three bullets at the back of Mr. Elrod.

158.   Decedent and Decedent's Estate have suffered damages as a direct and proximate result of Defendants' violations of Decedent's constitutional rights, including but not limited to, subjecting Decedent to great physical and emotional pain and deprivation of his constitutionally protected liberties.

**Fifth Claim:**
**Constitutional and Civil Rights Violations - 42 U.S.C. § 1983**

159.   All allegations above are renewed here.

160.   Plaintiff alleges that high ranking City of Omaha officials, including high ranking police supervisors, such as Defendant Schmaderer, Does 11 through 25, and/or each of them, knew and/or reasonably should have known, that Defendant Lugod, was untrained in, or trained below the standard of care, in the use of force and responding to subjects who appear, act, and/or who manifest symptoms of intoxication, all in violation of Elrod's rights under the 4th and 14th Amendments to the United States Constitution.

**Sixth Claim:**
**Constitutional and Civil Rights Violations - 42 U.S.C. § 1983**

161.   All allegations above are renewed here.

162.   Plaintiff alleges that high ranking City of Omaha officials, including high ranking police supervisors, such as Defendant Schmaderer, Does 11 through 25, and/or each of them, knew and/or reasonably should have known, that Defendant Lugod, was untrained in, or trained below the standard of care, in the use of deadly force and responding to subjects who appear, act, and/or who manifest symptoms of intoxication, and in situations as actually existing at all times prior to and while Defendant Lugod shot and killed Mr. Elrod all in violation of Elrod's rights under the 4th and 14th Amendments to the United States Constitution.

**Seventh Claim:**
**State Based Constitutional and Civil Rights Violations**

163.   All allegations above are renewed here.

164.   Defendant Lugod's and Does #1-10, inclusive, actions and inactions described above and incorporated here, proximately caused the violation and depravation or rights guaranteed to Mr. Elrod by the Nebraska Constitution and Statutes, including but not limited to, the rights to be free from an unreasonable seizure of his person and the rights to be free

20

from the use of excessive, unreasonable, and unjustified force, and otherwise be able to enjoy the rights and privileges secured by the Nebraska Constitution

### Damages

165.    All allegations above are renewed here.

166.    As a direct and proximate result of Defendants' actions and inactions, Plaintiffs incurred funeral and related costs.

167.    Plaintiff seeks judgement for general damages for Decedent's next of kin for his wrongful death of a sum in excess of the cap on damages set forth in *Neb Rev Stat* § 13-926.

168.    Plaintiff seeks general damages for Decedent's Estate for the conscious pain, fear, apprehension, and suffering he suffered prior to his death in sums in excess of the *Neb Rev Stat* § 13-926 statutory damages cap.

169.    Plaintiff seeks general damages for Decedent's violation of his constitutional and civil rights.

170.    Leave to amend claims and damages at the time of the final pretrial conference is requested.

### Requests for Relief

171.    On the foregoing basis, Plaintiff requests a declaration of a right to trial by jury, and permitting trial to a jury and permitting judgment against Defendant City of Omaha for:

171.1.    The full amount of the Tort Claim cap as provided by law for the general damages of decedent's next of kin due to his wrongful death; and

171.2.    An amount in excess of the Tort Claim cap equal to reasonable compensation for the loss and wrongful death to the next of kin; and

171.3.    The full amount of the Tort Claim cap as provided by law for decedent's conscious pain and suffering; and

171.4.    An amount in excess of the Tort Claim cap equal to reasonable compensation for decedent's conscious pain and suffering; and

171.5.    Special damages amounting to the sums necessary to provide post-mortem care for decedent's body, for his funeral, burial, and legal services

CV5042.08

proximately caused and required by his death. The amounts of these special damages are being discovered and are not yet fully known; and

171.6.  Punitive damages against Defendants as permitted under the Nebraska Constitution Article VII-5 payable to the School Fund[6]; and

171.7.  Punitive Damages under any other available mechanism; and

171.8.  An Order declaring that the statutory limit on damages recoverable for a political subdivision tort claim is unconstitutional and void; and

171.9.  All taxable court costs and litigation expenses to Mr. Elrod, and taxing them against the Defendant on all Claims; and

171.10. Attorney's fees and costs to the extent recoverable by law, including but not limited to, those available under 42 U.S.C. § 1988, and fees for a successful declaration that either or each challenged statute is unconstitutional, and contrary to opinions rendered by the Nebraska Attorney General, to the extent such opinions have been rendered; and

171.11. Prejudgment interest as allowed by law.

171.12. Any and all other relief deemed just.

## Jury Demand

172.   Plaintiff respectfully demands trial by jury.

February 19, 2018.

Lucinda Beadle, Personal Representative
of the Estate of Daniel A. Elrod,
Plaintiff,

By: _____

    Brian E. Jorde, #23613
    DOMINALAW Group pc llo
    2425 South 144th Street
    Omaha, NE  68144-3267
    402-493-4100
    *Plaintiff's Lawyer*

---

[6] Neb. Const. art. VII, sec. 5 (1875)

22

CV5042.08

# Certificate of Service

I hereby certify that on Tuesday, February 20, 2018 I provided a true and correct copy of the Amended Complaint to the following:

City of Omaha represented by Ryan Wiesen (Bar Number: 24810) service method: Electronic Service to Ryan.Wiesen@cityofomaha.org

Beadle,Lucinda,Personal Rep of, represented by Domina,David,A (Bar Number: 11043) service method: Electronic Service to ddomina@dominalaw.com

Lugod,Alvin, represented by Michelle Peters (Bar Number: 20021) service method: Electronic Service to michelle.peters@ci.omaha.ne.us

City of Omaha represented by Michelle Peters (Bar Number: 20021) service method: Electronic Service to michelle.peters@ci.omaha.ne.us

Lugod,Alvin, represented by Ryan Wiesen (Bar Number: 24810) service method: Electronic Service to Ryan.Wiesen@cityofomaha.org

Signature: /s/ Jorde,Brian Emmanuel (Bar Number: 23613)